[Civil No. 3183. Filed September 17, 1932.]

[14 Pac. (2d) 250.]

TEXANA BUTLER, R. B. BUTLER, VIVIAN BUT-
LER JONES, Wife of BENNETT JONES, VER-
DIE BUTLER and MYRTLE BUTLER, Appel-
lants, v. A. M. QUINN and LLOYD THOMAS,
Appellees.

Messrs. Clark & Clark, for Appellants.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld,
for Appellees.

LOCKWOOD, J.—This is an action by A. M. Quinn
and Lloyd Thomas, hereinafter called plaintiffs,

against Texana Butler, R. B. Butler, Vivian Butler Jones, Verdie Butler and Myrtle Butler, hereinafter called defendants, to enjoin the latter from obstructing and blocking a certain alleged private lane in section 32, township 3 North, range 3 East, Gila & Salt River base and meridian. The case was tried to the court without a jury, and judgment was duly rendered declaring, among other things, a certain portion of said section to be a private way for the use and benefit of the owners of part of the land in said section, and enjoining defendants from maintaining any structures obstructing the use and occupancy of such lane, and from said judgment this appeal was taken.

There are some three assignments of error, one based on the admission in evidence by the court of a certain map, and the other two being in effect that under the facts appearing in the record and the law applicable thereto plaintiffs herein were not entitled to the relief given.

There is comparatively little dispute in regard to the facts that we consider necessary to a proper determination of the case, and we state them as follows: In 1910 S. T. Butler and his wife bought certain property described in the deed to them as "all of the north one-half of the southwest quarter of Section 32, Township 3 N., Range 3 E., being 80 acres more or less." The south one-half of the southwest quarter was then and later owned by various persons. In 1920 Butler died intestate, and his estate was in the process of being probated. About that time the various owners of the southwest quarter of section 32 aforesaid apparently decided that their lands had been so subdivided that it would be inconvenient in the future to describe them by government survey or by metes and bounds in each deed, so they employed a surveyor to survey said southwest quarter and the subdivision thereof, and on the twenty-sixth day of

April 1921, the owners of all the various plots of ground located in the south one-half of said southwest quarter and Texana Butler, the surviving wife of S. T. Butler, who had been appointed as administratrix of his estate, signed an agreement which reads as follows:

"State of Arizona
"County of Maricopa.  SS.
"Know All Men by These Presents:
"That the S. T. Butler Estate, Robert P. Tribble, Russell McDaniels, J. M. Ruggles and Sarah C. Ruggles, his wife, Isaac H. Kipp and H. Elizabeth Kipp, his wife, A. J. Powers and Ada A. Powers, his wife, D. E. Nelson and Ella H. Nelson, his wife, Jack Tharpe and Mabel Tharpe, his wife, N. A. Gardner and Rose A. Gardner, his wife, Wilber P. Etris and Margaret Etris, his wife, Samuel Schumacker and Lillie Schumacker, his wife, and Lee Cockrill being the owners, severally, of all the southwest one quarter of Section 32, T. 3 N., R. 3 E., G. & S. R. B. & M., have caused said property to be surveyed, subdivided and platted and have mutually agreed that the property interests of the above named parties are as shown on the accompanying plat and in accordance with the following:

| | |
|---|---|
| S. T. Butler Estate | Tract 'A' |
| Robert P. Tribble | Tract 'B' |
| Russell McDaniels | Tract 'C' |
| J. M. & Sarah C. Ruggles | Tract 'D' |
| Isaac H. & Elizabeth Kipp | Tract 'E' |
| A. J. & Ada A. Powers | Tract 'F' |
| D. E. & Ella H. Nelson | Tract 'G' |
| Wilber P. & Margaret Etris | Tract 'H' |
| Samuel & Lillie Schumacker | Tract 'I' |
| Lee Cockrill | Tract 'J' |
| Jack & Mabel Tharp | Tract 'K' |
| N. A. & Rose A. Gardner | Tract 'L' |

"And the above named parties hereby declare that said plat shows the location and gives the dimensions of all tracts and roads or avenues; and that hereafter

each tract and road or avenue shall be known by the letter or name that is given to each respectively in said plat; and hereby dedicate to the public, for public use, those roads or avenues designated on said plat as 'Central Ave.,' 'Northern Ave.,' and 'Seventh Ave.'

"In witness Whereof, we have hereunto set our hands this 26th day of April, 1921.

| | | |
|---|---|---|
| Russell McDaniels | D. E. Nelson | Jack Tharpe |
| J. M. & Sarah C. Ruggles | Ella H. Nelson | Mabel Tharpe |
| Isaac H. Kipp | | N. A. Gardner |
| H. Elizabeth Kipp | Samuel Schumacker | Rose A. Gardner |
| Ansel J. Powers | Lillie Schumacker | S. T. Butler estate |
| Ada A. Powers | | by Texana Butler Adm. |
| Robert P. Tribble | Lee Cockrill | Wilber P. Etris |
| | | Margaret Etris |

"State of Arizona
"County of Maricopa.   SS.

"This instrument was acknowledged before me this 26th day of April, A. D. 1921 by Russell McDaniels, J. M. Ruggles, Sarah C. Ruggles, Isaac H. Kipp, H. Elizabeth Kipp, A. J. Powers, Ada A. Powers, D. E. Nelson, Ella H. Nelson, Wilber P. Etris, Margaret Etris, Samuel Schumacker, Lillie Schumacker, Lee Cockrill, Jack Tharp, Mabel Tharp, N. A. Gardner, Rose A. Gardner and Texana Butler.

"J. S. GRIFFIN,
"Notary Public.

"My commission expires Nov. 8th, 1922."

This agreement was written on a sheet of tracing paper, on which also appeared a map of the southwest quarter, as surveyed in accordance with the agreement, and the original tracing was delivered to the Phoenix Title & Trust Company. There is no evidence as to what afterwards became of it. A copy of said original was made by some person, the agreement appearing on the original being typewritten on the copy, and such copy was presented to the county recorder of Maricopa county and by him marked as

filed and recorded at request of N. A. Gardner at 10:40 A. M., on May 12, 1921, in book 10 of Maps at page 20. This copy is the only "page 20, Book 10 Maps," in the recorder's office.

Some time thereafter the estate of S. T. Butler was distributed to defendants, an undivided one-half to Texana Butler, the surviving wife, and an undivided one-eighth to each of the other defendants, being the children of S. T. Butler and Texana Butler.

Thereafter all of the defendants executed various deeds between themselves and to other parties covering various portions of the S. T. Butler land, wherein they described the property conveyed by them as being "a part of tract A of the subdivision of said southwest quarter, according to the plat of record in the office of the County Recorder of Maricopa County in Book 10 of Maps, page 20 thereof," and these deeds were duly recorded. In 1928, and after the execution and recording of many of these deeds, plaintiffs entered into an agreement of purchase from one Carl Matluich of certain land immediately south of defendants' tract A, their deed describing the land purchased as part of "tract B," and also referring to the map found in book 10 of Maps, page 20.

On such map there appears an area marked "private lane," 25 feet in width and extending from Central Avenue on the east to Seventh Avenue on the west. This lane is not parallel to the government survey marking the south boundary of the north half of the southwest quarter aforesaid, but runs in a slightly northeasterly and southwesterly direction, so that all of it, except a very small portion of the western end, lies entirely within the north half of the southwest quarter previously owned by S. T. Butler, and it leaves a certain portion of such north half of the southwest quarter lying south of the lane and in subdivisions B, C, D and E of the map, which

have always been owned by persons other than any of the Butlers or their privies.

It is the contention of plaintiffs that this so-called "private lane" was established as a right of way by the mutual agreement of all the property owners of the southwest quarter of said section in 1921. It is the position of defendants, on the other hand, that, so far as that portion of the land marked on the map as a private lane and lying west of the central point of the quarter-section is concerned, it was never so set apart, and is and always has been part of the property of defendants; the true southern boundary of their land, according to their claim, being the government survey line marking the south boundary of the north one-half of the southwest quarter of said section.

At the trial defendants objected most strenuously to the admission in evidence of the recorded map above referred to, on the ground that it was obviously merely a copy and not even a photographic copy of an original which, according to the testimony, had never been recorded, and that under paragraphs 5313 and 5314, Revised Statutes of Arizona of 1913 (Civ. Code), only original maps and dedications of subdivisions may be filed and recorded with the county recorder. So far as plaintiff's claim that the map in question was a statutory dedication of a private right of way over the S. T. Butler premises is concerned, we think it cannot be maintained, regardless of the question of whether the filing and recording of a copy of an original dedication is effectual or not.

At the time the dedication was attempted to be made, the estate of S. T. Butler was in the probate court. The attempted dedication was signed "S. T. Butler Estate by Texana Butler, Administratrix." It is too elementary to need authority to sustain the statement that the administratrix of an estate has absolutely no right to affect the title to any of the

real property belonging to said estate, except in the manner provided by statute and under the direction of the probate court. The S. T. Butler realty had descended to five heirs. Certainly the act of the administratrix referred to above could in no manner bind their interest in the property.

But plaintiffs urge that, even if such be the case, the record shows defendants are estopped from denying the dedication. We find that each and all of the defendants, after the preparation of the map and attempted dedication, executed certain deeds to the property, describing it by reference to such map, and the deeds thereto being duly recorded before plaintiffs purchased the land in question from their predecessor in interest Matluich. Are defendants then estopped from asserting that they did not consent to or ratify the dedication made by the administratrix, as aforesaid? Had plaintiffs deraigned their title from defendants directly, we think there can be no question that the latter would be estopped from denying that the property so bought followed the boundaries set forth on the map in question. *Evans* v. *Blankenship,* 4 Ariz. 307, 39 Pac. 812; *United States* v. *Chicago,* 7 How. 185, 12 L. Ed. 660. But, since plaintiffs' title comes from a third party, in no way connected with defendants, do the latter's deeds among themselves or to other parties, describing the estate of S. T. Butler as being ''Tract A . . . according to . . . Book 10 of Maps, page 20,'' have the same effect?

Public records are, of course, notice to all persons of the existence and contents of their properly recorded documents. Section 972, Rev. Code 1928; *Arizona Land etc. Co.* v. *Markus,* 37 Ariz. 530, 296 Pac. 251; *Lewis* v. *State,* 32 Ariz. 182, 256 Pac. 1048. Had plaintiffs made a search of these records, as reasonably prudent men would do before making the purchase of the property they now own, they would have found that their predecessor in interest had

deeded to them property whose boundaries were described as being shown on a certain map. They would also have found that the owners of the property adjoining them to the north had by various deeds recognized and accepted the boundaries shown in such map as being the boundaries of tract A, as shown thereon. They would further have found that the only map answering the description set forth in all of these deeds was the map which was offered and received in evidence. Having received notice from the county records that defendants had accepted the boundaries of their property, as shown by a certain map, we think when they made their purchase that they were entitled to rely on the declarations of defendants to the effect that the boundaries as shown in such map were the true ones, and the rights of way shown therein were recognized by the latter. It would make no difference for this purpose whether the map in question were properly recorded or not. The vital point is that the recorded deeds referred to it in such a manner that it could be definitely and positively identified. Since they did, it is immaterial whether it was in the possession of the county recorder legally or illegally, or whether it were anywhere else. So long as it was so identified, plaintiffs were entitled to rely upon it as showing the true boundaries, including roads and rights of way, and it was properly admitted in evidence for that purpose.

We hold, therefore, that the trial court was justified in determining that defendants were estopped from denying that the ground in controversy was a private lane, and that the land immediately to the south of the southern boundary of such lane was in tract B, as shown by the map in question. If this be true, defendants were properly enjoined from obstructing its use as such. The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.